# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

VIANEY GUEVARA,

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security[1],

Defendant.

_______________________________________/

Case No. 1:26-cv-01260-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I. INTRODUCTION

Plaintiff Vianey Guevara ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II. FACTUAL BACKGROUND

Plaintiff was born in 1973, has at least a high school education, and previously worked in

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 9.)

sanitation. (Administrative Record ("AR") 35, 86, 109, 134, 159, 468.) Plaintiff filed claims for DIB and SSI payments March 9, 2022, alleging she became disabled on March 4, 2014, due to a broken left arm; broken ankle; right arm tendons; pain when standing up; history of car accidents; panic attacks, anxiety, and depression. (AR 23, 87, 110, 135, 160, 467.)

**A. Relevant Evidence of Record[3]**

**1. Medical Evidence**

In October 2013, Plaintiff complained to her treating physician of radiating pain in her right elbow aggravated by repetitive movement. (AR 873–77.) On examination, Plaintiff had tenderness to palpation. (AR 875–877.)

A physical examination performed by orthopedist Van N. Polglase, M.D., in December 2013 showed that Plaintiff "continues to have pain at the lateral epicondyle [of her elbow] with direct pressure and with stressing of the extensor muscles." (AR 880.) Dr. Polglase also noted an increase in pain in Plaintiff's right shoulder. (AR 880.) That next month, Dr. Polglase found that Plaintiff's physical examination results "remain[] the same" with "tenderness directly over the lateral epicondyle" and a "positive Cozen test." (AR 883.)

In May 2014, Plaintiff presented for a follow up appointment. (AR 890.) Francisco Unguez, M.D., conducted a physical examination showing range of motion in her right shoulder and elbow is "within normal limits with pain at the end" and "2+ tenderness to palpation about the [acromioclavicular (AC)] joint area lateral epicondyle." (AR 890.)

Plaintiff complained to Kevin Calhoun, M.D., in July 2014 of continuous pain in both shoulders and elbows, with associated numbness, tingling, and weakness in her hands. (AR 646.) She reported taking pain medication and that steroid injections "provided minimal pain relief." (AR 646, 647.) Plaintiff's physical examination showed "positive impingement sign for both shoulders," decreased range of motion of the bilateral shoulder, and tenderness to palpation and decreased range of motion in her right elbow. (AR 647–48.) Dr. Calhoun requested an MRI, acupuncture therapy, and referral to an orthopedic surgeon. (AR 648–49.)

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

In August 2014, an MRI of Plaintiff's right shoulder "revealed evidence of [acromioclavicular (AC)] joint arthritis and tendinosis of the rotator cuff." (AR 620, 673.) An MRI of Plaintiff's right elbow performed that same time "revealed evidence of lateral epicondylitis." (AR 620, 675.)

A physical examination performed in December 2014 by M. Nathan Oehlachlaeger, D.C., showed decreased range of motion in Plaintiff's shoulders and elbows, with positive apprehension and impingement sign in her right shoulder, and pain with Tinel's testing. (AR 637.) Valgus and varus forces also caused pain in both elbow joints. (AR 637.) Another physical examination performed that same month also showed reduced range of motion with pain in Plaintiff's right shoulder and right elbow. (AR 654–55.) She was prescribed pain medication, and a consultation with an orthopedic surgeon was noted as "pending," due to her "ongoing [right shoulder and right elbow] pain not responding to therapy." (AR 655.)

In March 2015, Plaintiff presented to orthopedic surgeon Peter T. Simonian, M.D., for evaluation of her right elbow and right shoulder. (AR 620–22.) Her history of left arm fracture and right ankle fracture was noted. (AR 620.) Plaintiff reported taking pain medication, and that physical therapy and cortisone injections in her shoulder were not helpful. (AR 620.) On physical examination, Plaintiff had limited range of motion in her right shoulder, tenderness in her AC joint and proximal biceps, strength of 4/5 in her rotator cuff, positive impingement test, with no scapular winging or snapping and intact neurovascular exam. (AR 620.) Plaintiff had normal range of motion in her right elbow with tenderness, and intact neurovascular exam. (AR 620.) The provider's assessment was that Plaintiff's "right shoulder recalcitrant impingement and AC joint arthritis [] has failed injection and therapy," and indicated the plan to "proceed with decompression and debridement and distal clavicle excision." (AR 621.) With respect to Plaintiff's right elbow, the provider assessed her with "lateral epicondylitis" and indicated the plan to "proceed with a cortisone injection." (AR 621.)

Plaintiff underwent a rotator cuff repair by Dr. Simonian in June 2015. (AR 660–62, 766, 924.) In September 2015, Dr. Simonian noted that Plaintiff continued to have pain "on extremes of motion, particularly with forward elevation." (AR 616.) Plaintiff was offered a cortisone injection

in her shoulder in November 2015, which she declined because "in the past they have not worked for her at all and have caused more pain." (AR 615.)

In January 2016, Plaintiff was involved in a motor vehicle accident. (AR 765.) She received chiropractic adjustments from February to June 2016. (AR 679–98.) An April 2016 MRI of Plaintiff's low back showed "annular disc tears at L3-4 and L5-S1." (AR 751–52, 774.)

Plaintiff complained of neck, low back, and bilateral shoulder pain in May 2016. (AR 766.) Plaintiff's physical examination showed increased muscle spasm and decreased range of motion in her cervical spine. (AR 769.) She had mild to moderate pain with palpation around the rotator cuff in both shoulders, with decreased range of motion. (AR 769–70.) Neer's Test, Hawkin's Test, and Yergason Test were all positive. (AR 770.) Plaintiff's lumbar spine exhibited muscle spasm, and she had muscle spasm and a positive straight leg raising test. (AR 770–71.) Her sensation, reflexes, motor function, and gait were normal. (AR 771–73.) Plaintiff had trace weakness in her left lower extremity. (AR 773.) The provider recommended her low back and shoulder pain be treated with steroids, muscle relaxants, and anti-inflammatory medications, along with therapy. (AR 775, 776.)

In July 2022, Steven Stoltz, M.D., performed a complete consultative internal medicine evaluation of Plaintiff. (AR 896–901.) She reported a history of left humerus fracture, right ankle fracture, right shoulder arthroscopy, bilateral shoulder pain, back pain, and right ankle pain. (AR 896.) Plaintiff's physical examination revealed no grip strength on the left and reduced range of motion in her left shoulder. (AR 899–900.) Otherwise, the findings were within normal limits. (AR 899–900.)

Plaintiff attended physical therapy in January and February 2023. (AR 1459–63.) She complained of chronic low back pain and reported that she has "flare ups" when lifting items greater than 20 pounds. (AR 1460.) She stated that she is limited to walking 20 minutes before needing a seated rest break. (AR 1460.) On examination, Plaintiff had increased low back pain, limited lumbar range of motion, positive dynamic heel drop test, increased shoulder pain, positive spinal loading test, and an inability to lift shoulders past 130 degrees. (AR 1460–62.) Due to a lack of progress, she was discharged with instructions to participate in a home exercise program. (AR 1463.)

In September 2024, Plaintiff resumed physical therapy, where she reported she had "good

satisfaction" for her low back pain with physical therapy, that the pain "comes and goes," but she has an "improved quality of life." (AR 1635.) She complained of upper back pain and both upper and lower back muscle weakness. (AR 1635.) Plaintiff's examination showed positive sacroiliac compression test and sacral tenderness to palpation with muscle spasm. (AR 1636.)

**2. Opinion Evidence**

In December 2013, Dr. Polglase limited Plaintiff to "no lifting over 10lbs" and "no repeated/repetitive use of the right arm." (AR 881.) That next month, Dr. Polglase restricted Plaintiff to "no lifting over 10lbs with the right hand and wrist." (AR 883–84.)

Dr. Unguez restricted Plaintiff in May 2014 to "no pushing [or] pulling," "no repetitive work with the right arm," and "no lifting over 10 pounds." (AR 890.) In July 2014, Dr. Calhoun limited Plaintiff to restrictions of "lifting, pushing, and pulling· not more than 10 pounds [and] no repetitive hand movement or repetitive arm movement." (AR 649.)

In December 2014, Dr. Oehlachlaeger restricted Plaintiff to "[n]o pushing, pulling, or lifting more than 10lbs with the right upper extremity" and "[n]o overhead work with the right upper extremity." (AR 638.) Dr. Simonian limited Plaintiff in September 2015 to "[n]o working at or above shoulder height and a weight restriction of 5 pounds with the right shoulder." (AR 616.)

**3. Plaintiff's Statement**

In April 2022, Plaintiff completed a function report with assistance from her daughter in law, Gloria Villa. (AR 30, 498–505.) She reported she can perform light household chores, maintain her grooming and hygiene with some difficulties, cook meals, care for a cat, manage her medications and appointments, drive, shop in stores, manage her finances, follow instructions, read, watch television, spend time with family, text, and video chat. (AR 499, 500, 501, 502, 503.)

**B. Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on September 16, 2022, and again upon reconsideration on December 13, 2022. (AR 23, 185–89, 197–208.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 209–306.) At hearings held on August 27, 2024, and February 4, 2025, Plaintiff appeared with her representative and a Spanish interpreter and testified before an ALJ as to her work history and

alleged disabling conditions. (AR 48–54, 66–74.) A Vocational Expert (VE) also testified at the hearing. (AR 56–60, 74–83.)

**C. The ALJ's Decision**

In decision dated February 28, 2025, the ALJ concluded that Plaintiff was not disabled. (AR 23–37.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 24–37.) The ALJ decided that Plaintiff met the insured status requirements of the Act through September 30, 2019, and had not engaged in substantial gainful activity since March 4, 2014, the alleged onset date (step one). (AR 26.) At step two, the ALJ found Plaintiff's following impairments to be severe: right shoulder arthritis and tendinosis status post arthroscopy; left shoulder tendinitis; right elbow epicondylitis; lumbar degenerative disc disease; history of right ankle fracture; obesity; and history of left humerus fracture. (AR 26.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 26–29.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except she can occasionally climb ladders, ropes, scaffolds, ramps, and stairs; she can occasionally crawl and kneel; she must never crouch or stoop; she must never operate foot controls with her right lower extremity; she can frequently operate foot controls with her left lower extremity; she must never reach overhead with her bilateral upper extremities; she must have the ability to adjust from a sitting to standing position on an hourly basis for a period of two minutes; and she can perform jobs of a non-complex nature requiring the performance of no more than simple and routine tasks.

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours per day, for 5 days per week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

(AR 29–35.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 30.)

The ALJ determined that Plaintiff had no past relevant work (step four) but that, given her RFC, she could perform a significant number of jobs in the national economy (step five), including marker, routing clerk, and assembler of small parts. (AR 35–37.) The ALJ concluded that Plaintiff was not disabled at any time from the alleged onset date, March 4, 2014, through the date of the decision. (AR 37.)

Plaintiff thereafter sought review of this decision before the Appeals Council, which denied review on December 16, 2015. (AR 1–8.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

## III. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or

> combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B. Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations

omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred in their assessment of the medical opinion evidence and failed to articulate clear and convincing reasons for discounting her testimony regarding her subjective complaints. (Docs. 11, 13.) The Commissioner responds that the ALJ properly evaluated the medical opinions, and substantial evidence supports the ALJ's evaluation of Plaintiff's symptoms. (Doc. 12.)

The Court agrees with Plaintiff that the ALJ did not adequately evaluate the opinions of Drs. Polglase, Unguez, Calhoun, Oehlachlaeger, and Simonian. Because further proceedings are required regarding this evidence, the Court does not reach the other allegations of error.[5]

### A. Legal Standard

Plaintiff's claims for DIB and SSI are governed by the agency's revised regulations

[5] *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

concerning how ALJs must evaluate medical opinions. 20 C.F.R. §§ 404.1520c, 416.920c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)–(b); 416.920c(a)–(b).

The Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (internal citations omitted). Accordingly, under the revised regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)). *See also id*. § 416.920c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). *See also id*. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). *See also id*. § 416.920c(c)(2).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the

> claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id.* (quoting § 404.1520c(b)(3)). *See also id.* § 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id.* Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in their decision, even in the discussions required by 20 C.F.R. §§ 404.1520c, 416.920c. *See* 20 C.F.R. §§ 404.1520b(c)(3), 415.920b(c)(3).

With these legal standards in mind, the Court reviews the weight given to the opinions of Drs. Polglase, Unguez, Calhoun, Oehlachlaeger, and Simonian.

**B. Analysis**

Drs. Polglase, Unguez, Calhoun, and Oehlachlaeger each restricted Plaintiff to lifting no more than 10 pounds, among other limitations; Dr. Simonian's lifting limitation, among others, was no more than five pounds. (AR 616, 638, 649, 881, 883–34, 890.) Without identifying the five specific providers, the ALJ found "the opinions contained throughout the record that [Plaintiff] can lift no more than five pounds or no more than 10 pounds with preclusion from reaching overhead are unpersuasive," explaining they

> are not supported by the benign objective findings documented by the providers. Further, the providers failed to provide an adequate explanation for the restrictive limitations. They are also inconsistent with the record as a whole, which revealed [Plaintiff] was able to engage in various activities of daily living, routine and conservative treatment regimen, and the benign objective findings as discussed above.

(AR 33 (citations omitted).) For the reasons that follow, the Court concludes that the ALJ's evaluation of these opinions is deficient because the ALJ did not adequately discuss the supportability and consistency factors and failed to articulate an explanation for rejecting that

opinion that is supported by substantial evidence. *Woods*, 32 F.4th at 792 (holding that an ALJ can "reject an examining or treating doctor's opinion as unsupported or inconsistent" if the ALJ "provide[es] an explanation supported by substantial evidence"). Although "the [] regulations eliminate the previous hierarchy of medical opinion testimony that gave special status to treating physicians, ALJs must still provide sufficient reasoning for federal courts to engage in meaningful appellate review." *Shannon B. v. Comm'r, Soc. Sec. Admin*., Case No. 6:21-cv-01144-HL, 2023 WL 371650, at *5 (D. Or. Jan. 24, 2023) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence), and *Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").)

**1. Supportability**

With respect to the supportability factor, the ALJ found that the five opinions were "not supported by the benign objective findings documented by the providers" and the providers "failed to provide an adequate explanation for the restrictive limitations." (AR 33.) The ALJ does not cite, much less explain, to what "benign objective findings" they refer or specify how those findings do not support the opinions, as the regulations require. Moreover, the objective findings by Drs. Polglase, Unguez, Calhoun, Oehlachlaeger, and Simonian, including elbow pain with pressure (AR 880); tenderness to palpation (AR 647–48, 883, 890); positive Cozen test (which evaluates whether the patient has "tennis elbow") (AR 883); pain at the end of range of motion (AR 890); positive impingement sign for both shoulders (AR 637, 647–48); decreased range of motion of the bilateral shoulder (AR 637, 647–48); decreased range of motion in the right elbow (AR 637, 647–48); positive apprehension sign in the right shoulder (AR 637); pain with Tinel's testing (AR 637); pain with valgus and varus forces in both elbow joints (AR 637); and pain with extremes of motion, particularly with forward elevation (AR 616) are not, despite the ALJ's characterization, "benign." *See, e.g., Paulette N. v. Saul,* No. 20-CV-04950-SK, 2021 WL 4902421, at *8 (N.D. Cal. Oct. 21, 2021) (decreased range of motion and tenderness in examinations "not normal"); *Lopez v. Berryhill*,

No. 18CV1573-WQH-LL, 2019 WL 2501928, at *7 (S.D. Cal. June 17, 2019) (examinations showing tenderness and pain with palpation tenderness "not entirely benign."). In fact, these findings tend to support the opinions that Plaintiff "can lift no more than five pounds or no more than 10 pounds with preclusion from reaching overhead." Without any explanation as to these (seemingly abnormal) examination findings do not support or "provide an adequate explanation" for the opined limitations, the Court concludes that the ALJ's supportability analysis lacks substantial evidence. *See Schmitzer v. O'Malley*, No. 1:22-CV-1038 JLT BAM, 2024 WL 4345772, at *5 (E.D. Cal. Sept. 30, 2024) (finding error in the supportability discussion where "the ALJ did not make any findings as to what extent—if any—Dr. Pietruszka supported the limitations identified in" the opinions and "failed to explain to what extent Dr. Pietruszka's own treatment records did not support his opinions."); *Katherine D. v. Comm'r, Soc. Sec. Admin*., No. 6:20-CV-1920-MO, 2024 WL 244625, at *6 (D. Or. Jan. 23, 2024) ("Regarding 'supportability,' the ALJ erred by failing to discuss the strength of the evidence underlying Dr. Hallenburg's conclusions."); *Ann M. v. Kijakazi*, No. 2:23-CV-01081-MAA, 2024 WL 39193, at *5 (C.D. Cal. Jan. 3, 2024) (finding a supportability analysis insufficient where "the ALJ did not explain why she found [the medical] opinions not supported, nor did she cite any findings in [the] treatment notes that demonstrate a lack of support").

**2. Consistency**

The ALJ's evaluation of the consistency factor is equally deficient. The ALJ found that the opinions are inconsistent with Plaintiff's "various activities of daily living, routine and conservative treatment regimen, and the benign objective findings." (AR 33.) First, the ALJ does not explain how the unspecified "various activities of daily living" are inconsistent with the opined lifting limitation. While Plaintiff reported daily activities in her function report that could indicate she was not as limited as Drs. Polglase, Unguez, Calhoun, Oehlachlaeger, and Simonian assessed, the ALJ failed to identify which of these activities the ALJ believed were inconsistent with the opinions. The ALJ also failed to explain how any of these daily activities (*e.g.*, light household chores, cooking meals, caring for a cat, driving, shopping, spending time with family, etc.) were inconsistent with the lifting restriction assessed. *See Garcia v. Comm'r of Soc. Sec.*, 732 F. Supp. 3d 1199, 1216 (E.D. Cal. 2024) (declining to find that the ALJ provided specific and legitimate reasons supported by

substantial evidence to discount medical opinion where the ALJ "did not discuss, in any detail, Plaintiff's [activities of daily living] when he discounted" the opinion and "failed to explain how Plaintiff's ability to cook, clean, drive, shop, and walk his child to school, invalidated the limitations proposed.").

Second, the ALJ referred to Plaintiff's "routine and conservative treatment regimen" as undermining the opinions. The record contains numerous references to Plaintiff's neck, spine, elbow, and shoulder pain. *See* Section II.A.1., *supra*. Records also mention Plaintiff's use of pain medications, as well as recommended steroid injections. (AR 620, 646, 647, 655, 775, 776.) Plaintiff underwent two epidural steroid injections, with the record suggesting that neither the injections nor the medications were effective. (AR 615, 620, 621, 646, 647, 1460–62, 1636.) Additionally, the record indicates that Plaintiff's shoulder surgery in June 2015 did not resolve entirely Plaintiff's issues (*see* AR 616, 766, 769–70, 773, 899–900, 1460–62). *See Godoy v. Comm'r of Soc. Sec. Admin.*, No. CV-23-02000-PHX-MTL, 2024 WL 4211770, at *7 (D. Ariz. Sept. 17, 2024) ("Treatment notes support that despite the left hip surgery, Plaintiff experienced continuing and increasing symptoms following the surgery. Because the surgery was not successful, it does not support the claim that it was conservative."); *cf. Smartt v. Kijakazi*, 53 F.4th 489, 493, 500 (9th Cir. 2022) (finding ALJ properly discounted subjective pain testimony based on conservative treatment where claimant treated with ongoing pain medication after initial cervical spine stabilization surgery with "both self-reported and objective improvement"). Thus, the record does not support the ALJ's characterization of Plaintiff's treatment as "routine and conservative." *See Delsid v. O'Malley*, No. 1:23-cv-00665-BAM, 2024 WL 2318045, at *5 (E.D. Cal. May 22, 2024) (collecting cases and noting "the ALJ characterized Plaintiff's treatment as conservative, noting her regular Toradol injections and medication management" and that "Courts, including courts in the Ninth Circuit and in this district, more recently have questioned whether injections (and even pain medications) constitute conservative treatment").

Third, the ALJ pointed to the "benign objective findings" as inconsistent with the opinions. The ALJ does not explain how these "findings" undermine the opined lifting restriction. *See Beltran v. Kijakazi*, No. 1:21-cv-00603-JLT-BAM, 2023 WL 6164105, at *5 (E.D. Cal. Sept. 21, 2023)

(finding that the ALJ did not "clearly address the consistency factor" because they did not "explain the extent to which the limitations identified by [the opining physician] are inconsistent with other evidence in the record, including the opinions from other medical sources and nonmedical evidence."); *see also Rios v. O'Malley*, No. 1:22-cv1164-HBK, 2024 WL 280602, at *5 (E.D. Cal. Jan. 25, 2024) (remanding when ALJ did not "provide the requisite explanation" regarding consistency). And, the medical records cited by the ALJ either do not document "benign" findings or do not pertain to Plaintiff's allegations of physical impairments (*see* AR 33 (citing AR 620 (limited range of motion in right shoulder, tenderness in AC joint and proximal biceps, strength 4/5 in rotator cuff, positive impingement test); AR 769–73 (increased muscle spasm and decreased range of motion in cervical spine; mild to moderate pain with palpation around the rotator cuff in both shoulders, with decreased range of motion; positive Neer's Test, Hawkin's Test, and Yergason Test; muscle spasm in lumbar spine; positive straight leg raising test; trace weakness in left lower extremity); AR 899–900 (no grip strength on the left and reduced range of motion in left shoulder); AR 926 (documenting treatment for depression/anxiety)).[6] *See, e.g., Paulette N.*, 2021 WL 4902421, at *8; *Lopez*, 2019 WL 2501928, at *7.

Fourth, the ALJ erred when they ignored the fact that the opinions of Drs. Polglase, Unguez, Calhoun, Oehlachlaeger, and Simonian and opinions were each consistent with one another: they all limited Plaintiff's lifting to 10 pounds or less. Because the ALJ failed to consider how consistent each of these five opinions were with one another, the ALJ failed to consider adequately the consistency factor. *Glenreginald M. v. Bisignano*, No. 2:25-CV-01910-PD, 2026 WL 887652, at *6 (C.D. Cal. Mar. 31, 2026); *see N.F. v. SSA Comm'r*, No. 25-CV-08644-VC, 2026 WL 1487928, at *1 (N.D. Cal. May 28, 2026) (reversing persuasiveness determination where the ALJ failed to consider that the three subject medical opinions were consistent with each other.); *Torie H. v.*

[6] While Commissioner points to other evidence in the record to support the ALJ's conclusion (*see* Doc. 12 at 16 (citing AR 1460)), this is the sort of *post hoc* rationale that is impermissible in the Social Security context. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts."); *Stout v. Comm'r Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006) (a reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the ALJ himself); *see also Walker v. Comm'r of Soc. Sec.*, No. 2:22-CV-01871-EJY, 2024 WL 64784, at *4 n.4 (D. Nev. Jan. 4, 2024) ("In response to Plaintiff's motion, the Commissioner specifically addresses the supportability and consistency factors and provides citations to the record. Unfortunately these are *ad hoc* rationales the Court cannot consider.").

*O'Malley*, No. 1:24-CV-03072-EFS, 2024 WL 4554169, at *6 (E.D. Wash. Oct. 22, 2024) ("The ALJ additionally failed to consider when considering the consistency factor that Dr. Metoyer and Dr. Genthe's opinions were consistent with each other.").

Fifth, and finally, the ALJ erred in evaluating the doctors' opinions together rather than considering them individually. The regulations require an ALJ to analyze medical opinions on a source-by-source basis. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). This means that the ALJ must offer a separate explanation for each medical source who provided opinions. Here, the ALJ grouped them together.[7] *See Glenreginald*, 2026 WL 887652, at *6.

The Court is aware of the general proposition that ALJ's are to resolve ambiguities and conflicts in the record. *Ford*, 950 F.3d at 1154. It is also mindful of the deference desired by the agency in promulgating these revised regulations. However, the text of the regulations explicitly requires an explanation of how the ALJ considered the supportability and consistency of an opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Harmonizing this requirement with Ninth Circuit law requiring a detailed and thorough summary of conflicting evidence, and an interpretation and findings thereon, the ALJ must explicitly address evidence that supports and is consistent with a less-than-persuasive medical opinions, and should this evidence fail to persuade, the ALJ must provide legally sufficient reasons. *See Buethe v. Comm'r of Soc. Sec.*, No. 2:20-cv-552-KJN, 2021 WL 1966202, at *7 (E.D. Cal. May 17, 2021) (citing *Lambert*, 980 F.3d at 1277) ("[T]he ALJ must provide sufficient reasoning that allows [for] review.")). *See also Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1994) (while the ALJ need not discuss all evidence presented to them, they must explain why "significant probative evidence has been rejected"). This the ALJ did not do, and therefore the Court declines to find substantial evidence supports the ALJ's the RFC. *See Garmany v. O'Malley*, No. 1:23-CV-00607-HBK, 2024 WL 3105824, at *6 (E.D. Cal. June 24, 2024) (errors

---

[7] And, in grouping the five opinions together for the same limitation, the ALJ erred in silently rejecting limitations in the opinions that differed from one another (*see, e.g.*, AR 616 ("[n]o working at or above shoulder height and a weight restriction of 5 pounds with the right shoulder."); AR 649 (no "pushing and pulling not more than 10 pounds [and] no repetitive hand movement or repetitive arm movement"); AR 658 ("[n]o pushing [or] pulling . . .more than 10lbs with the right upper extremity" and "[n]o overhead work with the right upper extremity."); AR 881 ("no repeated/repetitive use of the right arm"); AR 883-841 (restricting lifting "with the right hand and wrist"); AR 890 ("no pushing [or] pulling"). *See Woods*, 32 F.4th at 792 ("[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion . . . without providing an explanation supported by substantial evidence").

in addressing medical opinion evidence "calls into question whether the assessed RFC . . . [is] supported by substantial evidence").

**C. Harmless Error Analysis**

The ALJ's erroneous analysis of the persuasiveness of the opinions of Drs. Polglase, Unguez, Calhoun, Oehlachlaeger, and Simonian is not harmless. Errors are harmless when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination." *Stout v. Comm'r, Social Sec. Admin*., 454 F.3d 1050, 1056 (9th Cir. 2006). Here, had the ALJ accepted the opinions, the ALJ likely would have reached an RFC determination with a lesser exertional level. That, as Plaintiff points out (Doc. 11 at 8), together with her age, would have warranted a finding of disability as of her fiftieth birthday under the Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2 § 201.12. *See Undra D. v. Acting Comm'r of Soc. Sec*., No. 2:24-CV-01609-TLF, 2025 WL 2962099, at *3 (W.D. Wash. Oct. 21, 2025) ("This error was not harmless; if Dr. Budak's opinion had been properly assessed, plaintiff may have been found disabled under the Medical-Vocational Guidelines grids.") *See also Carter v. Comm'r of Soc. Sec*., No. 2:24-CV-01177-DGE, 2025 WL 747429, at *10 (W.D. Wash. Mar. 10, 2025) ("These errors were not harmless, as they impacted the RFC formulated by the ALJ. If Plaintiff's testimony and the opinions of Dr. Craig and Nurse Wong had been credited, the ALJ could not have concluded Plaintiff was able to work.") (internal citations omitted); *Suzi Marie H. v. O'Malley*, No. 3:22-cv-01963-WQH-AHG, 2024 WL 965233, at *14 (S.D. Cal. Mar. 5, 2024) (determination that medical opinions were unpersuasive without providing an explanation supported by substantial evidence was "not inconsequential since it could have impacted the final RFC.").

**D. Remand for Further Proceedings**

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Notably, except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).

Here, the Court finds, and Plaintiff agrees (*see* Doc. 11 at 8), that remand for additional proceedings is necessary because the persuasiveness of the physicians' opinions must be analyzed further before a determination of disability may be made.[8] *See* 20 C.F.R. §§ 404.1520c(c)(2), 16.920c(c)(2); *see also Cesar C. v. Dudek*, No. 1:24-CV-03177-EFS, 2025 WL 1065959, at *10 (E.D. Wash. Apr. 9, 2025) (remanding for further proceedings where the ALJ "failed to address the supportability of [medical] opinions in any meaningful way"); *Arroyo v. Comm'r of Soc. Sec.,* No. 2:22-CV-00360-DMC, 2023 WL 3853485, at *8 (E.D. Cal. June 6, 2023) (remanding for further proceedings where the ALJ failed to explain how a physician's opinion was inconsistent with other objective medical evidence); *cf. Emily B. v. Kijakazi*, No. 4:20-CV-05174-SMJ, 2022 WL 17224299, at *6 (E.D. Wash. Sept. 14, 2022) (observing that the revised regulations rejected application of the Ninth Circuit's "credit-as-true" doctrine to medical opinions and the commentary expressly stated: "it is never appropriate under our rules to 'credit-as-true' any medical opinion").

## V. CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED. The case is REMANDED to an ALJ for further proceedings consistent with this Order. The Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff Vianey Guevara and against Defendant Frank Bisignano, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **July 23, 2026**

/s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE

---

[8] As to the ultimate outcome of Plaintiff's claim, the Court expresses no opinion as to the level of persuasiveness that should be ascribed to the limitations. Nor does the Court express what Plaintiff's RFC ultimately should be. These are for the ALJ to decide. *Ford*, 950 F.3d at 1154.